UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mark Bell,                                                  Civil No. 18-2474 (MJD/ECW)

    Plaintiff,

                               **REPORT AND RECOMMENDATION**

v.

American Accounts & Advisers, Inc.,

    Defendant.

---

This matter is before the Court on Plaintiff Mark Bell's ("Bell" or "Plaintiff") Motion for Attorney's Fees. (Dkt. No. 8.) Bell seeks an order from the Court awarding attorney's fees in the amount of $8,157.50 pursuant to his acceptance of the terms within Defendant's Rule 68 Offer of Judgment, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(3). The motion has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Dkt. No. 12.) For the reasons discussed below, the Court recommends that the Motion be granted in part and denied in part and that Bell be awarded $6,270 in attorney's fees and $456.36 in costs.

## I.    BACKGROUND

On August 23, 2018, Bell initiated the present suit against Defendant American Accounts & Advisers, Inc. ("AA&A" or "Defendant") for alleged violations of the

FDCPA.  (Dkt. No. 1.)  The Complaint alleged AA&A sent Bell two debt collection letters beginning on or about June 6, 2018, which allegedly made improper threats to Bell in an effort to collect a debt in violation of the FDCPA.  (*Id.* ¶¶ 18, 24-59.)

On or about August 27, 2018, prior to any answer to the Complaint, AA&A made a Rule 68 Offer of Judgment ("Rule 68 Offer").  The Rule 68 Offer provided in relevant part:

> Pursuant to Rule 68, Federal Rules of Civil Procedure, Defendant offers to allow judgment to be taken against them in this action, in the amount of $1,001 *together with costs, disbursement and reasonable attorney's fees*."

(Dkt. No. 5-1 (emphasis added).)  In the accompanying cover letter, AA&A demanded that Plaintiff's Attorney, Anthony Chester, provide his billing records for review.  (Dkt. No. 17-4.)  In lieu of providing these records, AA&A offered an additional $1,000 in attorney's fees.  (*Id.*)

On September 10, 2018, Bell accepted AA&A's Rule 68 Offer, noting that the issue of reasonable attorney's fees and costs would be submitted to the Court for a determination.  (Dkt. No. 5.)  On September 10, 2018, Mr. Chester demanded $3,347.50 in attorney's fees from AA&A arising out of prosecuting this case.  (Dkt. No. 17-5.)  Mr. Chester further represented to AA&A's counsel: "we will not negotiate our fees."  (*Id.*)  On September 11, 2018, AA&A's counsel asked for the billing records supporting the requested fees, noting that in "[his] experience the FDCPA Plaintiffs' lawyers whose client accepts our Rule 68 offer of judgment end up receiving $1,000 to $1,500 in fees."  (Dkt. No. 17-6.)  Mr. Chester represented he was not interested in negotiating his fees, but nevertheless offered to accept $3,000 in attorney's fees to settle the matter.  (Dkt. No.

17-7.) Mr. Chester represented that he would otherwise proceed with filing the Rule 68 Offer/Acceptance and preparing his fee petition, which he asserted was how the process was supposed to proceed. (*Id.*) Counsel also noted he would include the billing records as part of his fee petition. (*Id.*) AA&A subsequently reiterated its demand for billing records so that it could ascertain whether the requested fees were reasonable, and served Mr. Chester with a Rule 68 Offer of Judgment with respect to attorney's fees in the amount of $1,700. (Dkt. Nos. 17-3, 17-8.)

The next communication between the parties occurred on October 8, 2018, as part of a "meet and confer" email from Mr. Chester regarding the present Motion for Attorney's Fees and Costs. (Dkt. No. 17-9.) Mr. Chester represented that he was seeking $465.36 in costs and in excess of $8,000 in attorney's fees. (*Id.*) AA&A agreed to the amount in costs, but opposed the requested attorney's fees. (Dkt. No. 17-10.)

The present motion was filed on October 19, 2018. (*Id.*) The supporting papers included Mr. Chester's billing records.

## II.  ANALYSIS

Bell seeks attorney's fees and costs under the fee-shifting provision of the FDCPA. Attorney's fees are mandatory under the FDCPA. *See* 15 U.S.C. § 1692k(a)(3) ("[A]ny debt collector who fails to comply with [FDCPA is liable for,] . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."); *see also Iverson v. Greystone All., LLC*, No. CIV. 14-1027 (ADM/HB), 2015 WL 4635840, at *3 (D. Minn. Aug. 4, 2015) (citations omitted).

**A.     Standard of Review**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This lodestar method is used by courts to determine attorney's fees in FDCPA cases. *See Gupta v. Arrow Fin. Svcs., LLC*, Civ. No. 9-3313, 2012 WL 1060054, at *1 (D. Minn. Mar. 29, 2012). Ultimately, the fee applicant bears the burden to produce evidence supporting the hourly rates charged and the hours expended. *See Hensley*, 461 U.S. at 433. In addition to the number of hours reasonably expended on the litigation, courts may consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 424 n.3, 434. Overall, "the most critical factor is the degree of success obtained." *Id.* at 436; *see also Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) ("The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole.") (citations omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## B.    Reasonable Hourly Rate

Mr. Chester is claiming a rate of $325 per hour for the work he performed in this case.  While AA&A claims that this rate too high, it does not set forth what it believes is the reasonable rate.  The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  In determining the reasonable hourly rate, "district courts may rely on their own experience and knowledge of prevailing market rates."  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).  Additionally, "the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 895 n.11 (emphasis added); *Owner Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., No*. CIV. 05-2809 JRT/JJG, 2012 WL 6760098, at *6 (D. Minn. Sept. 30, 2012) (same) (citations omitted).  Consideration of these factors weighs against the $325 hourly fee in this case requested by Mr. Chester.

As to the reasonableness of his hourly rate, Mr. Chester submits his declaration, the billing statements in this matter, and his curriculum vitae.  (Dkt. Nos. 10, 10-1, 10-2.)  Mr. Chester represents he became licensed to practice law in 2013 and that he has practiced consumer law since 2015.  (Dkt. No. 10-1.)  He further asserts that he has handled over 500 clients in consumer law matters.  (*Id.*; Dkt. No. 10, ¶ 8.)  Mr. Chester does not set forth how many of these consumer cases dealt with FDCPA claims.  At the time that he undertook Bell's representation, Mr. Chester agreed to work on a

contingency fee basis.[1]  (Dkt. No. 10, ¶ 10.)  He states that $325 is his current hourly rate for consumer law clients, including clients billed by the hour, and is consistent with billing rates charged by attorneys with a comparable level of experience.  (*Id.*, ¶ 8.)  Mr. Chester also attaches the United States Consumer Law Attorney Fee Report Survey of 2015-2016, authored by Ronald L. Burdge ("Burdge Report") and the Laffey Matrix in support of his hourly rate.  (Dkt. Nos. 10-5, 10-6.)  The Burdge Report lists the median hourly rate for consumer lawyers in Minneapolis at $350 per hour, but fails to take into account the simplicity of a case like this one only involving two letters sent to Bell by AA&A.  More importantly, the average rate of $350 set forth in the Burdge Report is based on a practitioner with 12.5 years of experience in the Minneapolis/Saint Paul area.  (Dkt. No. 10-5 at 265.)  The average hourly rate for an attorney practicing consumer law with 1-3 years of experience is $255 and the average rate for an attorney practicing 3-5 years is $325.  (*Id.* at 266.)  Mr. Chester's three years of experience falls directly in the middle of these two ranges, supporting a fee lower than the $325 requested.[2]

---

[1]  Mr. Chester does not specify whether the contingency fee agreement specified that his hourly rate was $325.

[2]  The Court gives little weight to the Laffey Matrix's rate of $371 for an attorney with 1-3 years of experience (Dkt. No. 10-6), as it does not adjust rates for areas of practice, and deals with prevailing rates in Washington D.C.  *See Olson v. Messerli & Kramer, P.A.*, No. 07-CV-0439 PJS/RLE, 2008 WL 1699605, at *2 (D. Minn. Apr. 9, 2008) ("For example, the Laffey Matrix does not distinguish between the rates generally charged by lawyers who specialize in patent or antitrust law and the rates charged by lawyers who specialize in consumer-protection or family law.  Justly or unjustly, lawyers in certain areas of practice charge a lot more than lawyers in other areas of practice.  The Court therefore finds the Laffey Matrix unreliable and of little value in determining a reasonable hourly rate.").  Indeed, the Laffey Matrix method has been discredited in this District and courts have refused to utilize it in FDCA cases.  *See, e.g.*, *Gorton*, 2009 WL

In addition to his own declaration, Mr. Chester submits a declaration from Twin Cities attorney Adam Strauss, of Tarshish Cody PLC.  Strauss states that he has devoted his practice to the FDCPA and other consumer matters exclusively since 2015, with additional prior experience in developing a consumer law practice.  (Dkt. No. 10-3.)  Based on his observations, experience and research, Mr. Strauss states that Mr. Chester is an experienced and proficient consumer lawyer who should be able to ask for and receive a minimum of $325.00 per hour for his services.  The Court gives little weight to the Strauss Declaration.  Mr. Strauss appears to have more FDCPA experience than Mr. Chester, yet in a more recent and more complicated FDCPA class action case Mr. Strauss asserted a lower rate of $275.  *See Love Stone v. Aargon Agency, Inc.*, Dkt. No. 45, ¶¶ 17 and 19, 17-cv-02314-KMM (D. Minn. July 25, 2018).  The only objective basis for the $325 rate provided by Mr. Strauss in his present Declaration,[3] are the decisions *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955 (D. Minn. 2011) (awarding a $350 rate), and *Gupta v. Arrow Fin. Servs., LLC*, No. 09-CV-3313 SRN/SER, 2012 WL 1060054 (D. Minn. Mar. 29, 2012) (awarding a $400 rate).  (Dkt. No. 10-3, ¶ 16.)

---

9073861, at *2 n.3; *Bankey v. Phillips & Burns, LLC*, Civil No. 07–2200 (DWF/RLE), 2008 WL 2405773, at *2 n.1 (D. Minn. June 11, 2009) ("Courts in this district have recently indicated that they found the Laffey Matrix unpersuasive in determining reasonable hourly rates for attorneys pursuing FDCPA cases in Minnesota, and this Court agrees.").

[3]   It appears by Mr. Chester's fees report that he, and not Strauss, was the one responsible for adding these citations to the Strauss Declaration.  (Dkt. No. 10-2 at 4 (Oct. 8, 2018 (entry).)

7

In *Phenow*, the attorney had been practicing since 2003 and handling FDCPA cases for approximately six years. *See Phenow v. Johnson, Rodenberg & Lauinger, PLLP,* 10-cv-02113 (DWF/JJK), Dkt. No. 29, ¶¶ 3-4. The Court found that "Mr. Glover is a leading member of the consumer-protection bar who practices regularly before this district and has the level of skill, experience, and reputation that justifies the rate applied for in this case." *Phenow*, 766 F. Supp. 2d at 957.

In *Gupta*, *supra*, the fee of $400 was awarded to a lawyer with 15 years of experience, who had served as adjunct professor at the William Mitchell College of Law teaching federal consumer rights law and had trained other lawyers regarding FDCPA litigation practices. *See Gupta v. Arrow Fin. Servs., LLC*, No. 09-CV-3313 SRN/SER, Dkt. No. 43-1. Plaintiff also relies on *Gorton v. Debt Equities*, LLC, No. CIV. 08-4817 MJD/JJK, 2009 WL 9073861, at *4 (D. Minn. July 13, 2009), where the court held that the lead attorney was entitled to $350 per hour rate (a decrease by the court from the requested $425 per hour). *Gorton* involved an attorney with at least 11 years of experience. *Id.* at *2.

By way of comparison, Mr. Chester has only practiced law since 2015. The level of his experience is reflected by the multiple entries in his billing records showing he needed to consult with several attorneys in this case. (Dkt. No. 10-2 at 3.) *See Erickson v. Messerli & Kramer P.A*., No. CIV.A. 09-3044 DWF/JJG, 2011 WL 3798581, at *2 (D. Minn. Aug. 25, 2011) (finding rate of $250 to be appropriate where attorney "has under four years of experience, she acted as the lead counsel on this case and practices exclusively in the area of consumer law with a focus on FDCPA litigation."). As to a

recent proper range of fees, "[i]n the past couple of years, judges of this District presiding over FDCPA cases have approved hourly rates for successful plaintiffs' attorneys ranging from $200 to $350." *Midwest Disability Initiative v. Nelmatt, LLC*, No. 16-CV-1890 (PJS/KMM), --- F. Supp.3d ----, 2018 WL 4616455, at *4 (D. Minn. Sept. 26, 2018) (citing *Meidal v. Messerli & Kramer, P.A.*, No. 18-CV-0985 (PAM/BRT), 2018 WL 4489693, at *2 (D. Minn. Sept. 19, 2018)) ($300 per hour); *Goetze v. CRA Collections, Inc.*, No. 15-CV-3169 (MJD/FLN), 2017 WL 5891693, at *4 (D. Minn. Nov. 28, 2017) ($220); *Kuntz v. Messerli & Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 WL 3332222, at *3 (D. Minn. Aug. 4, 2017) ($350); *Iverson v. Greystone All., LLC*, No. 14-CV-1027 (ADM/HB), 2015 WL 4635840, at *3 (D. Minn. Aug. 4, 2015) ($250 and $300))).

Based on Mr. Chester's experience, the range of recent local rates involving FDCPA claims, the simplicity of the case, the other evidence submitted by Mr. Chester to the Court, and based on this Court's experience and knowledge regarding prevailing market rates, Mr. Chester's hourly rate is reduced from $325 to $275.

## C. Reasonable Hours

Bell claims that Mr. Chester spent a total of 25.1 hours after self-excluding a number of time entries.[4] Of this total time, 9.3 hours were spent dealing with investigating the claim, drafting the Complaint and agreeing to the Rule 68 Offer. Based

---

[4] During the hearing, Mr. Chester also waived any fees for time spent preparing for and appearing at the hearing on the present Motion.

on Mr. Chester's claimed rate of $325 and the total amount of time spent up to the Rule 68 Offer (as set forth in the billing records), the fees totaled $3,022.  This amount is comparable to $3,347.50 initially demanded and slightly higher than the $3,000 subsequently offered by Mr. Chester to AA&A to settle the issue of attorney's fees.

As it relates to the time spent prior to the Rule 68 Offer of Judgment, AA&A argues that the time spent drafting the Complaint was excessive because Mr. Chester did not draft it "from scratch."  (Dkt. No. 16 at 10, 15.)  Specifically, AA&A pointed the Court to number of Complaints drafted by Mr. Chester containing the same boilerplate sections as the instant Complaint.[5]  (*Id.*)  According to AA&A, the only differences between the complaints involve the factual allegations.  (*Id.*)  AA&A also takes issue with the length of the factual allegations and the legal arguments and conclusions contained in the complaint in this matter.  (*Id.* at 10-11.)  The Court has reviewed the previous complaints filed by Mr. Chester in other FDCPA cases and agrees that many of the sections (including the Introduction, Jurisdiction and Venue, Parties, Damages, Standing, Counts, and Prayer for Relief), are virtually identical to those included in the present Complaint, save for the information specific to the parties.  The major difference is the lengthy Factual Allegations.  Despite the use of a template Complaint, the Court does not find that the 3.2 hours spent drafting and revising the Complaint to be excessive.

---

[5]  Citing Complaints in *Ellis v. Jefferson Capital Sys, LLC*, No. 18-CV-1010 (WMW/LIB) filed April 13, 2018; *Bell v. Portfolio Recovery Assocs., LLC*, No. 18-CV-1027 (PAM/TNL) filed April 16, 2018; *Blake v. Portfolio Recovery Assocs., LLC*, No. 18-CV-1028 (PAM/HB) filed April 16, 2018; and *Ramirez v. Portfolio Recovery Assocs., LLC*, No. 18-CV- 1285, filed May 8, 2018.

Even AA&A admits that the Complaint includes a lengthy factual allegation section, but argues that this is a basis for deducting Mr. Chester's fees, given Rule 8's basic requirement of notice pleading.  (Dkt. No. 16 at 10-11.)  While Rule 8 "does not require 'detailed factual allegations,'" claims "must [nevertheless] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  The Court will not punish Bell or his counsel for adding sufficient facts, notwithstanding the legal conclusions contained therein, to withstand a possible Rule 12 challenge and for the Complaint to otherwise be used as a tool for settlement, as was the case here.  In sum, the Court finds the approximate total of 3.2 hours spent drafting and editing the Complaint to be reasonable.

Nevertheless, the Court will deduct some time related to drafting the Complaint, investigating the claims and the Rule 68 process.  The Court will subtract the August 22, 2018 entry titled, "Rule 11 investigation-letter violation, deception claims, etc.," in the amount of 1.1 hours.  The Court makes this deduction because Mr. Chester had previously expended approximately 2.4 hours of time investigating the merits of Bell's FDCPA claim and examining the relevant case law, thereby making the additional "Rule 11" time needlessly duplicitous based on the simple violations at issue in this case.  In addition, the Court will subtract 0.1 hours from the total time spent related to Mr. Chester receiving a signed fee arrangement from his client on July 24, 2018.  Such a review has no bearing on the legal services provided or the success of this case.  In addition, 0.2 hours related to redacting and attaching exhibits to the Complaint should be subtracted

because such actions are administrative and clerical in nature. (*See* Dkt. No. 1.) Finally, the Court will deduct the 0.3 hours in time spent by Mr. Chester on September 10, 2018 drafting a cover letter to the acceptance of the Rule 68 Offer of Judgment given that the time spent on this task is excessive and clerical in nature. The Court concludes that the remaining time spent by Mr. Chester through the acceptance of the Rule 68 Offer to be reasonable.

As noted, the remaining time claimed pertains to Bell's attempts at reimbursement of attorney's fees. AA&A argues that this Court should only award fees for services up to the Rule 68 Offer on the basis that Mr. Chester has "unclean hands." (Dkt. No. 16 at 18.) AA&A's "unclean hands" argument is based on Mr. Chester's failure to provide a billing statement prior to the present Motion. (*Id.*) Compensation for reasonable fees incurred in preparing a fee petition is permissible. *See Bankey v. Phillips & Burns, LLC*, No. 07-cv-2200 (DWF/RLE), 2008 WL 2405773, at *6 (D. Minn. June 11, 2008) (including reasonable portion of fees incurred in preparing fee petition in award of FDCPA attorney's fees). However, at least one court in this District has refused to provide any fees in a situation, like here, where a plaintiff's counsel refused to provide any documentation in support of their claimed fees during the parties' negotiations. *See Olson*, 2008 WL 1699605, at *3. In *Olson*, the plaintiff's counsel claimed a total of 70.56 hours of time spent preparing the fee petition, which was the largest block of time that the attorneys devoted to any aspect of the case. *Id.* The court found that the time spent preparing the fee petition was unreasonable, given that counsel regularly filed fee petitions with the court. *Id.* Moreover, the defendants' counsel represented that a

substantial reason for the parties' failure to settle the amount of the fees was the plaintiff's counsel's refusal to provide any documentation in support of their claimed fees during the parties' negotiations. *Id.* The Court concluded:

> Had Olson's counsel not engaged in this unreasonable conduct, it is quite likely that no fee petition would have been necessary. Because counsel's own unreasonable conduct created the need to file the fee petition—and because Olson's counsel have grossly overreached in seeking to recover for 70.56 hours spent preparing the fee petition—the Court will not order M & K to pay for any of the time spent on the fee petition.

*Id.*

There is no dispute that the time spent seeking fees represented the largest amount of time spent by Mr. Chester in this case, albeit not the 70-plus hours claimed in *Olson*. That said, unlike the attorney in *Olson*, Mr. Chester admittedly did not have same level of experience in bringing fee petitions. Any inefficiencies by Mr. Chester in bringing the present motion is reflected in the decreased rate of $275 assigned by the Court. In addition, the Court finds that the present Motion would not have been rendered unnecessary by the production of the billing statement. As noted above, 9.3 hours were spent investigating the claim, drafting the Complaint and agreeing to the Rule 68 Offer. At a rate of $325, the amount of fees for this period, as reflected in the billing records, totals approximately $3,022, which was comparable the $3,000 that Bell was willing to accept. AA&A's counsel was not even willing to settle at $3,000 (with a last offer of $1,700), asserting that typical fees for FDCPA claims fall within the range of $1000 to $1,700. (Dkt. Nos. 17-3, 17-6, 17-7.) AA&A's counsel stated at the hearing that this range was not a range established by billing records, but rather what other plaintiffs were

13

willing to settle for as it relates to attorney's fees. Indeed, it continues to be AA&A's position that amount reflected in the billing records through the date of acceptance of the Rule 68 Offer is excessive. While the additional fees incurred as the result of seeking attorney's fees significantly exceeds the statutory damages award in this case, the Court finds that the Bell did not choose to create the disparity, and although AA&A had a right to aggressively defend against what it saw as excessive fees, doing so caused an additional amount of litigation, and significantly increased the number of hours Bell's attorney had to expend. *See Armstrong v. Rose Law Firm, P.A.*, No. CIV. 00-2287MJD/SRN, 2002 WL 31050583, at *5 (D. Minn. Sept. 5, 2002) (awarding fees in the amount of $40,000 despite the award of $1000 in statutory fees because the defense produced a large amount of litigation, and significantly increased the number of hours plaintiff's attorney committed to the case).

In reviewing the time submitted by Mr. Chester related to obtaining fees, the Court concludes that the time spent was reasonable. The only exception to this is the 0.6 hours spent by Mr. Chester looking up templates of fee motions at his firm, a task that is administrative in nature. This amount should be deducted from the total time claimed by Mr. Chester. In sum, this Court concludes that 22.8 hours represents the reasonable amount hours expended by Mr. Chester in prosecuting this case. Therefore, Bell should be awarded $6,270 (22.8 hours x $275). The Court also concludes that no other downward departure from this amount is appropriate.[6]

---

[6] The Court has considered AA&A's other arguments in support of a downward departure and finds them without merit. AA&A argued that the Court should take into

**D.     Costs**

Finally, the Court must address Bell's request for $456.36 in expenses.  AA&A has not objected to this request, and the Court finds that the amount sought—which includes the filing fee, fees for service of process and other similar charges—is proper and reasonable.  *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (per curiam) (reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys may be included as part of a reasonable attorney's fee).

---

account the fact that this case was taken by Mr. Chester on contingency basis.  The Court notes that one of the factors it may considered in determining reasonable amount of fees is whether the fee is fixed or contingent.  *Hensley*, 461 U.S. at 424 n.3.  According to AA&A, "[i]n no event. . . should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount."  (Dkt. No. 16 at 17.)  The only support for this assertion provided by AA&A is a case subsequently abrogated by the United States Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87 (1989), where the Court held that "[s]hould a fee agreement provide less than a reasonable fee . . ., the defendant should nevertheless be required to pay the higher amount."  *Blanchard*, 489 U.S. at 93; *see also Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 996 (8th Cir. 2012).  Therefore, even if the reasonable fee exceeds the amount owed as part of any agreement between Bell and Mr. Chester, the reasonable fee as determined by this Court prevails under the plain language of the FDCPA.  *See.* 15 U.S.C. § 1692k(a)(3).  AA&A also argued that the Court should consider the fact that Mr. Chester represented Mr. Bells' wife in a separate FDCPA case against a different defendant.  (Dkt. No. 16 at 16.)  While the Court may consider the nature and length of the relationship between client and attorney, there is no evidence here of a longstanding professional relationship between the Bells and Mr. Chester justifying a downward departure in the fees incurred.  *C.f., Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1063 (N.D. Cal. 2005) (finding that an upward departure was not warranted given that the attorney had a longstanding relation representing the plaintiff in 73 similar ADA cases).

### III.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Attorney's Fees (Dkt. No. 8) be **GRANTED** in part and **DENIED** in part as follows:  Plaintiff should recover from Defendant attorney's fees and costs in the amount of $6,726.36.

DATED: November 15, 2018           *s/ Elizabeth Cowan Wright*
                                   ELIZABETH COWAN WRIGHT
                                   United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).